## IN THE MATTER OF EDWARD KENT, AN ATTORNEY-AT-LAW, RESPONDENT.

Argued December 4, 1962—Decided January 21, 1963.

*Mr. J. Gilbert Van Sciver, Jr.,* Chairman, Burlington County Ethics Committee, argued for the order.

*Mr. Martin L. Haines* argued the cause for respondent (*Messrs. Dimon, Haines and Bunting,* attorneys).

PER CURIAM. Respondent, an attorney-at-law, is charged with violating *Canon* 9 of the *Canons of Professional Ethics* which provides in part:

"A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel."

The complaint against respondent was brought by Mr. James P. Geoghegan, a member of the bar of the Commonwealth of Pennsylvania. Mr. Geoghegan claimed that respondent communicated and negotiated with one of Mr. Geoghegan's clients to effectuate a satisfaction of a judgment rendered in favor of said client, Harvey P. Moyer, and against a judgment debtor, Paul Colton, then represented by respondent, and that at that time respondent had knowledge of Mr. Geoghegan's personal interest, as well as his interest as an attorney representing both Mr. Moyer and Mr. Moyer's insurance carrier in that matter.

The judgment for which satisfaction was sought arose out of a collision between automobiles owned by Colton and Moyer, an assured of Calvert Fire Insurance Co., another client of Mr. Geoghegan. Calvert settled Moyer's claim against it for $1,000 and obtained a subrogation for that amount from Moyer against Colton. Mr. Geoghegan thereafter represented the insurance carrier for the $1,000 and the assured for the excess damages. In the trial of that matter in Pennsylvania, Colton, then a Pennsylvania resident, was

represented by a Pennsylvania counsel. Mr. Geoghegan obtained a judgment against Colton of $1,569.50 which was not paid.

Following the entry of the judgment, Colton took up residence in Levittown, New Jersey. Colton was anxious to have the judgment satisfied of record so that his New Jersey driving privilege might be restored, it having been revoked under the Pennsylvania-New Jersey reciprocity arrangement because of the said judgment. Shortly before the conduct complained of, some efforts were made by Mr. Geoghegan and Colton's Pennsylvania counsel to arrive at an amicable arrangement for payment of the judgment. As these efforts by the attorneys proved unsuccessful, Colton, for several months, endeavored to talk directly to Mr. Geoghegan regarding the matter, but Mr. Geoghegan refused to discuss the matter with him—assertedly on the grounds that Colton was then represented by counsel. Colton claimed that as Mr. Geoghegan failed to cooperate, he called the insurance company directly and was advised that payments of $40.00 per month would be acceptable to it. When Mr. Geoghegan learned of this, he told Colton that payments of less than $50.00 per month would not be acceptable and required the delivery of a promissory note signed by Colton and his wife.

Thereafter, on or about October 1, 1961, Colton consulted respondent at Levittown, New Jersey. On October 2, 1961 Colton telephoned Moyer from respondent's office and an appointment was made to discuss the matter with him at Moyer's home in Pennsylvania that evening. When respondent and Colton arrived at Moyer's home, they were told by Moyer that he had discharged Mr. Geoghegan as his attorney. Respondent thereupon prepared a form of release and had Moyer execute it in exchange for $50.00 cash and a series of 15 postdated checks. Respondent lent Colton the $50.00 with which to pay Moyer.

The release was forwarded to Harrisburg, Pennsylvania, the next day to obtain a restoration of the driving privilege, but Colton was thereafter informed that in addition to the

release, a satisfaction of the judgment of record would be required. On October 5, 1961 respondent prepared and secured the execution of a warrant for satisfaction of the judgment from Moyer and personally presented it to the Prothonotary's Office of Montgomery County, Pennsylvania. That officer refused to accept it because the record plaintiff in the accident case was represented by Mr. Geoghegan and the Pennsylvania practice was to require the warrant for satisfaction to be executed by and to be received from plaintiff's attorney. The Prothonotary telephoned Mr. Geoghegan who, within a few minutes, appeared and identified himself and stated his position. Respondent likewise identified himself. They engaged in a heated argument in the Prothonotary's Office and thereafter all departed without having the judgment satisfied of record. Without doubt respondent then knew that, in addition to Moyer, Calvert and Mr. Geoghegan had some interest in the judgment.

Respondent immediately consulted a Pennsylvania counsel who advised him that the judgment could be discharged by Moyer if he would appear personally in the Prothonotary's Office and mark the record. Moyer did so and within the hour the judgment was discharged. The license was subsequently restored. The checks mentioned above were never honored.

As a result of respondent's actions, Mr. Geoghegan filed a complaint with the Burlington County Ethics Committee. A hearing was held and the Committee filed a presentment that respondent had violated *Canon* 9. We thereafter issued the order to show cause now under consideration.

Respondent concedes that he did not strictly comply with the Canons of Ethics. However, he claims that, at most, he committed only errors of judgment, brought on by an overly sympathetic attitude towards his client which caused him to substitute zeal for proper caution. Moreover, when he realized that he had erred, he sent a letter of apology which was satisfactory to Mr. Geoghegan. Finally, he points out that he received no fee from Colton but worked in Colton's interest

solely to help Colton obtain his driving privilege which he needed to earn a livelihood.

The "wise and beneficent" aims of *Canon* 9 are to shield the adverse party from improper approaches and to preserve the proper functioning of the legal profession. As to the latter aim, compensation for services is an attorney's professional right, and in matters affecting a professional right, candor and fairness require that other attorneys grant him a reasonable opportunity to assert and protect any such right which he may claim and possess. *Drinker, Legal Ethics* 202 (1953).

Respondent's conduct is admittedly unethical and unprofessional despite the fact that he thought he was serving his client. His conduct not only affected adversely the attorney's interest Mr. Geoghegan had in the judgment, but also the interest of Calvert Fire Insurance Co., of which respondent was aware, a subrogee to the extent of at least $1,000 of the $1,569.50 judgment. As Mr. Justice Hall said in *In re De Pamphilis*, 30 *N. J.* 470, 483 (1959):

"[His conduct] is dishonorable * * * and brings the profession into disrepute. * * * *Canon* 29 of the *Canons of Professional Ethics* imposes on all attorneys the obligation to 'strive at all times to uphold the honor and to maintain the dignity of the profession.'"

Nevertheless, because of his candor and his acceptable apology to Mr. Geoghegan who, as far as the record indicates, still represents the insurance company, we feel that the interests of the profession and the public will be adequately served in this case by the imposition of a reprimand.

Respondent is accordingly reprimanded.

*For reprimand*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*Dissenting as to punishment*—Justice HALL—1.